Carr, J.
No question has been raised, in the argument at the bar, and none could have been raised, as to the fairness, in point of fact, of the transaction as between Baptist and, Clausell; nor was it denied, that the sale of the slaves by the former to the latter, was ati actual sale, and, as between the parties, valid and effectual. But it was contended for the appellant, that possession did not accompany and follow the deed of Baptist to Clausell; that the sale was, therefore, fraudulent in law, as to the creditors of Baptist, according to the rule of Edwards v. Harben, 2 T. R. 587. and that Sydnor, as a creditor, had a clear right to levy his execution on the property. On the other hand, it was contended for the appellee, that as the sale from Baptist to Clausell was in itself a real and fair transaction, so the possession was at no time inconsistent with the bill of sale; but if it was so at any time, that the taking of possession by the vendee, and holding the property more than four years, had removed all ground for imputing fraud to the sale, before Sydnor was in a situation to assert any claim against Baptist. Let us then, inquire, 1. Whether the possession of Baptist under *539 the hiring, was so inconsistent with the deed as to bring the case within the rule of Edwards v. Harben ? 2. Does this rule comprehend a case where the possession, though not taken immediately, was taken and held under the deed, for years before any creditor obtained a lien by judgement ?
I have heretofore expressed my view of the rule of Edwards v. Harben, and have no idea of going over that ground again. It must be recollected, that this is a demurrer to evidence, where the court must make all such inferences in favor of the party, whoso case is taken from the jury, as the jury might fairly have made. It is admitted by all the cases, that possession remaining with the vendor, is but evidence of fraud which may be explained away. Now, suppose this case had gone to the jury upon this evidence; might not the jury have concluded from the evidence, that the bill of sale was executed upon an actual sale for a valuable consideration ? that there was a real delivery of the slaves, and a true and actual hiring of them for twelve months to the vendor; that the woman being a breeder, and the children small, were, really and bona fide, worth no more than their victuals, clothes, taxes and levies; that at the end of the year, the vendee resumed possession of the slaves, carried them to his own farm, and kept and used them as his own, till the day of his death, without a single claim from the vendor, or the assertion of any claim by any creditor of the vendor; and that he bequeathed them by his will, as his own property, never dreaming that any creditor of his vendor would set up a claim to take them: might not, nay, must not the jury, I ask, have drawn these conclusions from the evidence in the record ? I really think so, and feel that as taking their place, I ought to do the same. And viewing the case in this light, it seems to me, that the possession continuing with the vendor, is explained, and shewn to be consistent with the deed ; to be, in truth, the possession of the vendee; for, if the vendee had fairly bought and paid for the slaves, and they had been delivered, they were to all intents and purposes his own ; he might sell them, hire them, *540 send them to Africa; you cannot restrict him in exercising the rights of ownership; you cannot say, he might hire to others, but not to his vendor. The hiring was just as open and public here as the purchase.
Then, as to the second point, Can we say that this case is within the rule ? that the transaction was calculated to defraud, hinder or delay, the creditors of Baptist ? As between the parties, many cases decide that the bill of sale is good, if for valuable consideration, though not accompanied by possession; Steel v. Brown, 1 Taunt. 380. Kidd v. Rawlinson, 2 Bos. & Pull. 59. Robinson v. M’Donnell, 2 Barn. & Ald. 134. Thomas v. Soper, 5 Munf. 28. And where was the creditor, who, at the date of the bill of sale, could question any sale which Baptist might choose to make of his property? Not the appellants, for they were then and for a long time after creditors at large. Suppose at the time of this sale, Baptist had sold every slave he owned to traders for the southern market, who were about to take them directly out of the state, could these appellants have stopped them ? If the cases are examined, it will be found, that, in not one of them, has a creditor been heard to contest a conveyance, whose right did not attach while the property remained with the vendor. In Steel v. Brown, Steel sold Cockburne the lease and fixtures of a public house, received £ 200. in part, took his notes for the balance, and put the house and goods into his possession, taking a bill of sale of the fixtures and goods for his security: after about nine months, Cockburne becoming embarrassed in his affairs, Steel took possession of the goods : Brown had lent Cockburne the £ 200. which he paid to Steel in part for the purchase, and had taken an assignment of the lease, and a judgement acknowledged by Cockburne: after Steel took the goods into possession, Brown had his execution levied on them as the property of Cockburne, and immediately apprised Steel of what he had done, and Steel brought trover against him : at the trial, the defendant failed in proving his judgement, and the plaintiff obtained a judgement. Vaughan, *541 sergeant, moved for a new trial, on the ground that inasmuch as Cockburne had remained in possession of the goods for a considerable time after executing the bill of sale, the plaintiff had no title to them, nor any legal possession, under that instrument; and he cited Edwards v. Harben. The court were clearly against the new trial. One ground was, that the defendant had notice of the plaintiff’s lien, as was proved by his giving him notice of bis levy on the goods. But Mansfield, C. J. further remarks, “ No case has decided, that a bill of sale unaccompanied by possession, may not under certain circumstances be fair and valid. If one executes even a colorable bill of sale for a valuable consideration, though the vendor remains some time in possession, it is a good bill as between the parties. All that has been said about the transaction relates to third persons: but in the present case, if the defendants had proved themselves to bo creditors, which they failed to do, it is very doubtful, whether they could Lave been in a better situation than they now are, on account of the communication, which appears to have been made, at the time of the transfer of the lease.” .Lawrence, J. said, “ I am of tho same opinion. A bill of sale is good as between the parties to it, though no possession is taken at the time when it is executed. The case of Edwards v. Harben is good law, but not applicable here; that was the case of creditors.” Here we find, that though it made a part of the case stated, that the defendants lent Cockburne £ 200. yet, because they failed to shew themselves judgement creditors, they were denied the right to contest the fairness of the bill of sale, under the rule of Edwards v. Harben; and very correctly, it seems to me; for how could the sale be in fraud of those, who had no right to object to any sale the owner might choose to make ? So in the case before us: Suppose during tho year that Baptist held the slaves on hire, he had sold and delivered them to a stranger; could these appellants have objected ? or after they obtained their judgement, could they have taken tho slaves in execution ? And if Baptist might by this *542 fraud upon his vendee Claus ell, have extinguished all claim of the appellants upon the slaves, must not the effect be the same, when at the end of the year, he delivered them up to Clausellf thereby putting his seal anew to the bill of sale. Suppose the bill of sale thrown out of view, and that Clausell had, at its date, bought the slaves and paid the money, and at the close of the year 1822, Baptist had, in consideration thereof, delivered up the slaves to Clausell; surely, this would have been good against all creditors whose rights were not then so perfected as to enable them to object to a sale out and out. The case of Bartlett v. Williams, 1 Pick. 288. is directly in point: it was argued with great research, and the opinion is, I think, a very sensible one. The judge observes, “ It is certainly a general rule, that possession must follow and accompany the deed ; and that the possession of the vendor after the bill of sale, unexplained, would render the conveyance void, as against creditors. But such a possession may be explained, as in the case of Kidd v. Rawlinson, and be perfectly consistent with justice. Such possession may also be consistent with the terms of the deed. The doctrine in the case &c. of Edwards v. Harben is unquestionably sound. But there, the vendee did not obtain possession under the bill of sale, before the right of the creditors of the vendor accrued.” The judge also cites the case of Robinson v. M'Donnell, as bearing on the question, and I cannot but think that it has a pretty strong bearing ; for though it was a case of bankruptcy, and came more immediately within the statute of the 21 Jac. 1. yet the two statutes are nearly related, being in pari materia, both for the protection of creditors; and it is natural when the one is under discussion, for the mind to advert to the other. In that case, Bayley, J. says, “ Where there is a deed' executed, under which it is competent for a party to take possession immediately, and he does not do so in six months, I am not aware of any case, which decides that such omission would be fraudulent, so as to make the deed void, under the statute of Elizabeth. If indeed the right of any third persons had intervened, it might be void as against them.”
*543 The case of Williamson v. Farley, Gilm. 15. was relied on. I consider it materially different from this. There, the lien of the third person attached, while the possession of the vendor continued : there too, the vendee, though he had taken a bond, purporting that the slaves were hired for a year, and were to be delivered at the end of it, took possession of them in less than a month, thereby disaffirming the contract of hire. I am for affirming the judgement.
Cabell, J. I am for affirming the judgement, upon the ground that the vendee, Clausell, took possession of the property before the rights of the creditor attached. But for this, I should be for reversing it; for if there had been no such resumption of possession, I should have been clearly of opinion, that the case would come within the rule of Edwards v. Harben.
Brooke, J. I also am of opinion, that the judgement should be affirmed.
Tucker, P. The demurrer to evidence, filed by the defendant (the appellant here), presents, as is supposed, the single question, whether possession accompanied and followed the deed from Baptist to Clausell'l If it did, within the meaning of the principle established by tho case of Edwards v. Ilarben, and the numerous other cases of the same class, the judgement of the circuit court must be affirmed.
In the examination of this case, I shall assume, that the transaction was in point of fact fair and bona fide; that Clausell was a fair creditor, Baptist a real debtor, and the transaction honestly designed for the payment of a just debt, in property at a fair valuation. I shall also assume, that the delivery was with no actual covinous intent, but that it was bond fide, and that the hiring from Clausell to Baptist was also a bond fide transaction. The facts set forth in the demurrer sustain this view of tho case ; but if they were more doubtful, we should be bound to infer them, because the *544 jury might fairly have done so; and the defendant having withdrawn these inquiries, from the appropriate tribunal, cannot complain of the most favorable inferences being made by the court, in behalf of his adversary.
The defence, indeed, is, that, however fair the transaction may have been in point of fact, and however good and valuable the consideration, the deed is void, because it was unaccompanied by delivery of the possession. This defence must rest upon one of two grounds; either that there was no delivery when the deed was made, or that the delivery which was made, followed by the redelivery to Baptist on hire, was not a valid delivery.
There is some difficulty as to the date at which the deed was acknowledged. Take it, as was suggested at the bar, that the deeds were prepared on the 9th November, but were not executed until the 7th December following. The indorsement of that date, and the testimony, establish its execution then; and the witness further proves that, immediately thereupon, Baptist said to Clausell, the slaves being then present, “ here are the negroes; they are your property.” The witnesses then went away and left the slaves and Clausell there, and did not know that they were removed at that time. They were not removed, in fact; but a more express delivery cannot be established, unless it be rendered nugatory by the failure to remove them, or by the subsequent hiring. Whether, under the circumstances of the conflicting dates, and the relationship between the parties, the defendant might have successfully assailed the transaction before the jury, is not the question. That the transaction was bona fide, might very fairly have been inferred by the jury, from the consideration given, and the other circumstances proved, and we must accordingly infer it.
But it is contended, that the slaves were left in Baptist’s possession for more than a year. If the case turned upon this, it would have been a sufficient answer to this objection, that Clausell also lived with Baptist during the same time. It was enough that they staid where their master siaicl. *545 It would be a forced inference, that my slave, who lives where I live, is in the possession of my landlord, and not in my possession. This court has, in a very strong case, considered otherwise. In Braxton v. Gaines, 4 Hen. & Munf. 151. Braxton having received £ 100. for his daughter, gave her in lieu of it a negro woman; she and her slave continued to reside in her father’s family, and her father even included the slave in a mortgage to certain creditors: yet her rights were sustained against them. But, in this case, there was an express hiring, immediately after the delivery to Clausell under the bill of sale. It was a hiring by deed executed on the same day. Now, this hiring must, upon the demurrer to evidence, be taken to be bona fide. It presents, then, this question : is the sale of a slave fraudulent per se, because the vendee at the time of the purchase and delivery of possession, hires the slave to the vendor, even though that hiring be in fact bona fide and for a fair consideration ? I apprehend not. The transaction may, indeed, as between friends and relations, suggest a suspicion of unfairness ; but if it be a real and not a covinous transaction, the delivery would exempt it from the legal inference of fraud.
While I accede without difficulty to the doctrines, as I understand them, on this subject, I cannot but remark, that, however salutary they may be, I see no propriety in the exercise of our astuteness in applying them for the purpose of avoiding a fair transaction. It is better to follow the suggestion of lord Mansfield, that “ the statute of frauds ought not to be construed to make innocent parties sufferers Cadogan v. Kennett, 2 Cowp. 432.
Where, indeed, possession does not accompany and follow the deed, where the vendor’s possession and enjoyment is uninterrupted, or where the delivery, though ostensible, appears to have been only colourable, the transaction, according to all the cases, is fraudulent perse. But, if there be such delivery as the nature of the transaction admits, and if that delivery be real and not colourable, then the *546 case is not within the influence of Edwards v. Harben. Thus, where the situation of the property is such as to preelude the actual delivery ; where it is not so in the power of the vendor as that he can give, or so in reach of the vendee as that he can receive, the possession ; the want of delivery does not constitute fraud, provided the vendee takes possession as soon as it can be had. Such is the case of a ship at sea; such the case of the sale of a runaway slave; or of the purchase of goods in a warehouse, and receiving the key; or of the purchase of coals in bulk, or lumber in quantity, lying on the bank of a canal, or of the purchase of a sick slave; 5 Rand. 216. or of a horse in the country which I am to send for tomorrow; Ibid. All these are cases which do not come within the principle; because such possession is delivered as the transaction admits of. It is not that the rule is impaired; it is that the case does not come within it.
Admitting the rule, then, in its most unqualified terms, as establishing the law, there is always a previous question to be settled; the question of fact, whether there was such delivery as the nature of the case admitted of, and was that delivery real and bona fide? Hardaway v. Manson, 2 Munf. 230. If there was, then is the transaction good; if not, then it is bad. But this question of fact cannot be settled by any fixed and determinate rule. It depends upon the nature of each transaction, and must vary accordingly.
I have said, that in the inquiry as to the fact of delivery, it is essential it should appear, that it was real and bona fide. For if a delivery is only colourable, it is void. And whether colourable or not, is also a question of fact. In like manner, where a delivery is proved, and the property is redelivered to the vendor, upon whatever terms, the question presented, is a question of fact; was the delivery to the vendee real and bona fide, or only colourable and collusive? If the latter, it is fraud per se ; if the former, it is valid and effectual. For, though there be an immediate redelivery upon a new contract (for instance, a contract for hire) yet *547 this does not avoid the delivery by the vendor, I conceive, provided the redelivery on hire, be a real and bond fide transaction. If, indeed, it be covinous and collusive, then the delivery itself is infected; it is naught; it is void; and the case falls directly within the influence of the rule of fraud per se.
Innumerable instances might be presented of delivery and redelivery, which the common sense of every man must admit to be unassailable. I buy a horse from a countryman, and the seller immediately borrows him to save himself the fatigue of going home afoot. I buy a slave in midsummer, which I shall not want till Christmas, while the vendor wishes to keep him to finish his crop, and I hire him for the residue of the year to my vendor for a fair price. I invest my money in a lease for 99 years of a house, not for residence, but for the purpose of renting; and 1 immediately redemise it to my assignor for a year. I invest 10,000 dollars in slaves, not to till my land, but to be let to hire: Í make purchases, and on the completion of each purchase, I hire the slave to his former master. Can it be, that in these various transactions, so common in the concerns of life, that the purchaser is affected with constructive fraud, and must lose the benefit of his purchase ? I think not. The mischiefs of the rule would be greater than the frauds at which it is aimed, if it be permitted to insinuate itself into such transactions as those. While the rule is admitted to be inflexible, the question whether there has been a bond fide delivery, must depend in every case upon its own peculiar circumstances.
The case of Williamson v. Farley, Gilm. 15. cannot, perhaps, be reconciled with these principles, unless upon the ground that the taking possession of the slaves by Farley, within the year for which they were hired, was evidence that the hiring was only colourable and collusive. That is certainly a strong feature in the case ; but even with this, it seems to me to have gone very far. No reasons were given, however, for the opinion of the court, nor does it appear whether the case was argued or not.
*548 The case of Edwards v. Harben was not the case of a sale and a subsequent bailment. The deed was an absoJute sale on its face, but was intended as a security only, according to which character, possession would have been held by the debtor. The creditor refused to accept it, unless he was permitted to take possession in fourteen days. This is an express negative of his right before, and shewed the inconsistency of the real transaction with the deed.
It was contended, however, very strongly, that to recognize an immediate redelivery upon hire, is to provide a legal method of effectuating such a fraud; and that if there be such immediate hiring, it ought to appear upon the deed as part of the transaction. There might be yet more force in this argument, if fraud would be defeated by the avoidance of the contract of hire when contemporary with the deed. The objection could certainly not avail, if there was an actual interruption of the vendor’s possession for a month, a week, or even a day. And yet a redelivery upon hire within a short period, would be as much calculated to deceive the creditor, as if it were immediate. It would be indeed vain, to attempt so to arrange the possession of personal property, as altogether to prevent frauds upon purchasers and creditors. Some circumspection and vigilance must be demanded of them. Caveat emptor is the rule which applies to them. If I lend a man a horse to ride to Kentucky, and he sells him on the journey, it is the buyer’s loss. If I lend my slave to my son for any period less than five years, and he sells him, it is the buyer’s loss. If I hire a slave to a man at a distance and he sells him, it is the buyer’s loss. On either side, there is an evil to be avoided; and the most common transactions of life, and the ordinary cases of personal estate, will be trammeled and embarrassed, if our sole care is directed to the protection of creditors and purchasers, who ought to protect themselves.
Nor would the case be altered by making the contract of hire part of the instrument of sale. That instrument is never recorded. It is in the pocket of the vendee, and *549 never seen by the creditor. It cannot, therefore, give him any notice of the real character of the transaction. If the witnesses to the sale are witnesses also of the hiring, as in this case, the same evidence is afforded to the creditor of both acts.
Applying these principles to the case, and taking the transaction to be bona fide in all its parts, I am clearly of opinion, that there was a valid delivery, and that the effect of it was not destroyed by the immediate redelivery to Baptist on a new contract of hire. After the termination of that contract, they were taken into Claus ell’s own possession, and so continued until they were taken by execution; which confirms the fairness of the whole transaction, and proves that it was a real and not a colourable sale.
According to the view I have taken of the case, it is unnecessary to examine the interesting question, which has been so ably argued, as to the effect of the subsequent acquirement of possession by the vendee upon intervening rights of third persons. This question has been touched by one of the judges of this court in Claytor v. Anthony, 6 Rand. 305. and by another in Batton v. Glasscock, Id. 78. and is mentioned and waived, in the recent case of Shields v. Anderson, 3 Leigh 735, 7. But it may not be amiss to say, that it is strongly my impression, that the failure to deliver possession, where there is no real fraud intended, does not attach fraud to the transaction forever; and that a subsequent delivery will make it valid and effectual against all creditors, whose debts are contracted, and all purchasers whose bargains are made after such subsequent delivery. The taking possession will at least make it the same thing as if the deed was then made; see the remarks of Bayley J. in Jones v. Dwyer, 15 East 27, 8. Farther than this I am not disposed at this time to go; but shall be free to reexamine the question in other aspects, whenever it shall again arise.
Judgement affirmed.